**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MYESHA L. ROBBINS,<br>Plaintiff,<br>v.<br>ANTHEM, INC. *et al.*,<br>Defendants. | Case No. 2:25-cv-05833-CV (CTSx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO REMAND AND DENYING AS MOOT DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>**[DOC. ## 15, 23]** |

Before the Court are two motions in this employment-discrimination action. Plaintiff Myesha L. Robbins ("Plaintiff") seeks remand to Los Angeles County Superior Court, arguing that Defendant Elevance Health, Inc. ("Elevance Health" or "Defendant") has not established diversity jurisdiction. Defendant opposes remand and separately moves to compel arbitration. The principal jurisdictional dispute is whether several California-based defendants—Anthem Blue Cross, Blue Cross of California, The Anthem Companies of California, Inc., and The Wellpoint Companies of California, Inc.—should be disregarded as sham defendants. As detailed below, Defendant has not met its heavy burden to establish fraudulent joinder. Remand is therefore required.

On July 25, 2025, Plaintiff filed a Motion for Order Remanding Action to State Court. Doc. # 15 ("MTR").[1] Defendant filed an opposition on August 8, 2025. Doc. # 18 ("MTR Opp.").[2] Plaintiff filed a reply on August 18, 2025. Doc. # 19 ("MTR Reply"). On August 28, 2025, the Court found the motion appropriate for decision without oral argument and took the motion under submission. Fed. R. Civ. P. 78(b); Local Rule 7-15; Doc. # 22. On December 3, 2025, the Court permitted Defendant to file a sur-reply limited to the corporate structure of the California-based defendants as it relates to Plaintiff's employment with the Elevance Health companies. Doc. # 28 at 2. Defendant filed its sur-reply on December 15, 2025, Doc. # 30 ("Sur-Reply"), along with the declaration of Lisa Lawson, Doc. # 30-1 ("Lawson Decl.").

On October 31, 2025, Defendant filed a Motion to Compel Arbitration and Stay Action. Doc. # 23 ("MTC"). Plaintiff filed an opposition on November 26, 2025. Doc. # 24. On December 2, 2025, the Court found the motion to compel appropriate for

[1] Plaintiff also filed a declaration from counsel and exhibits in support. Doc. # 15-1 ("Kanani Decl."). Plaintiff also filed evidentiary objections to the declaration of Stefanie Morris submitted with Defendant's Notice of Removal. Doc. # 15-2.

[2] In support of its opposition to Plaintiff's motion to remand, Defendant filed a supplemental declaration from Stefanie Morris. Doc. # 18-1 ("Supp. Morris Decl.").

decision without oral argument and took it under submission. Fed. R. Civ. P. 78(b); Local Rule 7-15; Doc. # 25. Defendant filed a reply on December 15, 2025. Doc. # 29.

For the reasons stated below, the Court GRANTS Plaintiff's Motion to Remand to the extent it seeks remand, DENIES Plaintiff's request for attorney fees, and DENIES AS MOOT Defendant's Motion to Compel Arbitration.

## I. BACKGROUND

### A. Plaintiff's Allegations

Plaintiff filed this action in Los Angeles County Superior Court on January 10, 2025. Doc. # 1 ¶ 1; Doc. # 1-2. Plaintiff alleges that she began working for Defendants in March 2000 as a Claims Adjuster. Doc. # 1-2 ¶ 18. Plaintiff alleges that she later was promoted several times and, in 2016, was promoted to the position of Claims Accumulator Adjuster. *Id*. ¶ 19.

Plaintiff alleges that, on November 16, 2020, she began an approved medical leave of absence for total knee-replacement surgery. *Id*. ¶ 20. Plaintiff alleges that she suffered severe complications from that surgery, requiring additional surgeries, inpatient rehabilitation, physical therapy, and other medical testing. *Id*. Plaintiff further alleges that her medical care and recovery were delayed because of the COVID-19 pandemic and the specialized nature of her treatment. *Id*.

Plaintiff alleges that, during her medical leave, she remained in regular communication with Defendants and ensured that they received necessary leave documentation. *Id*. ¶ 21. According to the Complaint, Plaintiff's surgeon completed an "Anthem's Health Care Provider Statement" on January 10, 2022, which stated that Plaintiff was motivated and very likely to return to work, that Plaintiff was scheduled for surgery on May 10, 2022, and that Plaintiff's reduced work schedule would be determined at her first postoperative visit. *Id*. ¶ 22. Plaintiff alleges that this form supported medical leave from January 1, 2022, through May 31, 2022. *Id*.

Plaintiff alleges that, on January 11, 2022, she received an email from Defendants stating that they had received the provider statement and that no further action was

required. *Id*. ¶ 23. Plaintiff alleges that she received no further communication until February 3, 2022, when her manager, Alyssa Mowatt, told her that Defendants had denied her leave request on January 14, 2022, based on the asserted absence of a definite return-to-work date. *Id*. ¶ 24. Plaintiff alleges that she told Mowatt that her surgeon had provided an August 8, 2022 return-to-work date, and that her surgeon provided documentation on February 3, 2022, identifying that return date. *Id*. Plaintiff alleges that Defendants nevertheless terminated her employment on February 3, 2022. *Id*. ¶ 25.

The Complaint asserts fourteen claims under California law: (1) wrongful termination in violation of public policy, against all corporate defendants (*id*. ¶¶ 26–31); (2) disability and medical-condition discrimination under the Fair Employment and Housing Act ("FEHA"), against all named defendants (*id*. ¶¶ 32–42); (3) disability and medical-condition harassment under FEHA, against all named defendants (*id*. ¶¶ 43–54); (4) failure to accommodate under FEHA, against all corporate defendants (*id*. ¶¶ 55–65); (5) failure to engage in the interactive process under FEHA, against all named defendants (*id*. ¶¶ 66–77); (6) retaliation under FEHA, against all named defendants (*id*. ¶¶ 78–88); (7) failure to prevent, investigate, and remedy discrimination, harassment, and retaliation under FEHA, against all corporate defendants (*id*. ¶¶ 89–97); (8) discriminatory termination in violation of the California Family Rights Act ("CFRA"), against all corporate defendants (*id*. ¶¶ 98–104); (9) interference with CFRA leave rights, against all corporate defendants (*id*. ¶¶ 105–112); (10) retaliation for requesting and taking CFRA leave, against all corporate defendants (*id*. ¶¶ 113–121); (11) defamation, against all named defendants (*id*. ¶¶ 122–131); (12) intentional infliction of emotional distress, against all named defendants (*id*. ¶¶ 132–137); (13) unfair business practices under California Business and Professions Code section 17200, against all corporate defendants (*id*. ¶¶ 138–147); and (14) declaratory relief, against all corporate defendants (*id*. ¶¶ 148–155). Plaintiff seeks back pay, front pay, special damages, economic and non-economic damages, punitive damages where allowed by

law, declaratory relief, pre-judgment and post-judgment interest, statutory penalties, attorney fees, costs, injunctive relief, restitution, and other relief. *Id*. at 31–32.

**B. Defendant's Removal**

Defendant Elevance Health, Inc. removed the action on June 26, 2025, invoking diversity jurisdiction under 28 U.S.C. § 1332. Doc. # 1 at 1–2. Defendant alleges that Plaintiff is a California citizen; Elevance Health and The Elevance Health Companies, Inc. ("TEHC") are Indiana citizens; Alyssa Mowatt is a Maine citizen; and Yalisa Del Toro is a Florida citizen. *Id*. ¶¶ 9–18. Defendant acknowledges that Anthem Blue Cross, The Anthem Companies of California, Inc., The Wellpoint Companies of California, Inc., and Blue Cross of California are named defendants, but argues that their citizenship should be disregarded because they are sham defendants. *Id*. ¶ 9.

As relevant here, Defendant contends that Plaintiff's claims arise from her employment with TEHC and that Anthem Blue Cross, The Anthem Companies of California, Inc. (f/k/a The Wellpoint Companies of California, Inc.), and Blue Cross of California never employed Plaintiff or controlled her wages, work schedule, hours, or working conditions. *Id*. ¶ 14(e). Defendant further alleges that TEHC's predecessor hired Plaintiff on March 13, 2000; that Plaintiff was rehired on November 15, 2002; that she later became a Claims Adjuster and then a Claims Accumulator Adjuster; and that her employment with TEHC ended on February 4, 2022. *Id*. Defendant alleges that, from Plaintiff's hire in 2000 through the end of her employment in 2022, TEHC exercised complete control over Plaintiff's wages, schedule, hours, and working conditions; administered Plaintiff's requests for medical leave and employment-related benefits; conducted Plaintiff's performance reviews; issued Plaintiff's wage statements; and maintained Plaintiff's wage records. *Id*. Defendant therefore contends that the California-based defendants are sham defendants because no employment relationship existed between Plaintiff and those entities. *Id*.

In support of removal, Defendant submitted a declaration from Stefanie Morris, a Human Resources Business Partner, Director with Elevance Health. Doc. # 1-13 ¶ 1.[3] Morris states that her declaration is based on personal knowledge and her review of personnel, leave-of-absence, and payroll records maintained in the ordinary course of business. *Id*. Morris states that Plaintiff began working for WellPoint Health Networks, Inc. on March 13, 2000, voluntarily resigned on March 9, 2002, was rehired on November 15, 2002, was promoted to Claims Accumulator Adjuster in March 2016, and held that position until her termination on February 4, 2022. *Id*. ¶ 4(a).

Morris states that, throughout Plaintiff's employment from 2000 to 2022, TEHC exercised complete control over Plaintiff's wages, work schedule, hours, and working conditions, and that Elevance Health administered Plaintiff's medical leave and benefits, conducted her performance reviews, and issued her work equipment. *Id*. ¶ 4(b). Morris further states that TEHC issued Plaintiff's wage statements and maintained her wage records. *Id*. ¶ 4(c). Morris states that she reviewed Plaintiff's personnel file, leave-of-absence records, and payroll records and found no mention of Anthem Blue Cross,

[3] Plaintiff objects to several portions of the Morris declaration submitted with Defendant's Notice of Removal. Doc. # 15-2 at 3–6. Those objections are OVERRULED IN PART and DENIED AS MOOT IN PART. Morris states that her declaration is based on personal knowledge and review of personnel, leave, and payroll records maintained in the ordinary course of business. Doc. # 1-13 ¶¶ 1, 4. That is sufficient foundation at this stage for the Court to consider her statements describing Defendant's jurisdictional evidence, including Plaintiff's employment history, TEHC's asserted role in Plaintiff's wages and working conditions, TEHC's issuance and maintenance of wage records, the wage statements attached to the Notice of Removal, and the absence of certain California entities in the records Morris reviewed. Id. ¶¶ 4–5. The Court does not, however, accept any embedded legal conclusion, including that TEHC exercised "complete control" for purposes of employer status, or that the absence of documents in Morris's review conclusively proves that the California-based defendants could not have acted as employers, joint employers, agents, or integrated-enterprise entities. Plaintiff's objections to Morris's footnotes regarding corporate history and prior entity names are DENIED AS MOOT because the Court does not rely on those original footnotes and instead considers Morris's later clarification only for the limited purpose stated above. Doc. # 18-1 ¶¶ 6–7. Plaintiff's objections to Morris's statements regarding the residential addresses of Alyssa Mowatt and Yalisa Del Toro are also DENIED AS MOOT because the Court does not decide the individual defendants' citizenship. Doc. # 15-2 at 6. The Court likewise does not rely on the apparent typographical error in Morris's paragraph 9, which refers to a Maine address after discussing Del Toro's Florida address. Doc. # 1-13 ¶ 9.

The Anthem Companies, Inc. (f/k/a The Wellpoint Companies of California, Inc.), or Blue Cross of California in the documents she reviewed. *Id*. ¶ 5. Morris also states that she saw no documents suggesting that those entities controlled Plaintiff's wages, work schedule, hours, or working conditions, or issued Plaintiff's wage statements. *Id*.

**C. Plaintiff's Evidence in Support of Remand**

In support of her motion to remand, Plaintiff submitted a declaration from her counsel, Navid Kanani. Doc. # 15-1. Kanani represents that Exhibits A through F to his declaration are documents produced to him in response to requests for Plaintiff's employment records under California Labor Code sections 226, 432, and 1198.5. *Id*. ¶ 4. These documents include annual associate acknowledgment agreements, background-check documents, rehire documents, W-2 forms from approximately 2008 to 2016, performance evaluations and reviews, and a California withholding certificate. *Id*.

The documents submitted by Plaintiff include an annual associate acknowledgment bearing the WellPoint Health Networks logo. *Id*. at 5. They also include a background-investigation report for "Blue Cross of California" from March 2000. *Id*. at 27. Plaintiff's October 31, 2002 rehire letter appears on WellPoint Health Networks letterhead and offers Plaintiff employment as a Customer Care Associate II. *Id*. at 39. Plaintiff also submits W-2 forms identifying the employer as "ANTHEM BLUE CROSS" in 2008; "BLUE CROSS OF CALIFORNIA" in 2012; "THE WELLPOINT CO'S OF CA, INC." in 2013; and "THE ANTHEM CO'S OF CA, INC." in 2014. *Id*. at 46, 50–52. The W-2s also describe those entities as affiliates of WellPoint or Anthem. *Id*. Plaintiff's records also include a 2006 performance review bearing the WellPoint logo. *Id*. at 62. Plaintiff's 2014 California Employee's Withholding Allowance Certificate lists "Anthem Blue Cross of California" in the box for the employer's name and address. *Id*. at 85.

Plaintiff also submits California Secretary of State records. *Id*. ¶ 5.[4] Those records identify Blue Cross of California as a corporation formed in California and describe its business as a "Knox-Keene licensed Full Service Health Care Service Plan offering Blue Cross products." *Id*. at 88. They also identify The Elevance Health Companies of California, Inc. as a corporation formed in California, with its type of business described as a "payroll entity for regulated California entities." *Id*. at 96.

### D. Defendant's Evidence in Opposition to Remand[5]

In opposition to Plaintiff's motion to remand, Defendant submitted a supplemental declaration from Morris. Doc. # 18-1. Morris states that her initial declaration incorrectly described WellPoint Health Networks, Inc. as a predecessor of TEHC. *Id*. ¶ 6. Morris explains that WellPoint Health Networks, Inc. merged with Anthem, Inc. to form WellPoint, Inc. in November 2004, that WellPoint, Inc. changed its name back to Anthem, Inc. in December 2014, and that Anthem, Inc. changed its

[4] The Court takes judicial notice of the existence and contents of the California Secretary of State records, including that the records identify Blue Cross of California and The Elevance Health Companies of California, Inc. as California corporations and contain the business descriptions appearing on the face of those records. Id. at 88–97. The Court does not take judicial notice of any reasonably disputed factual inference from those records, including whether either entity employed Plaintiff or controlled the terms and conditions of her employment. *See* Fed. R. Evid. 201(b); *Daniels-Hall v. National Education Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010); *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

[5] Defendant filed three requests for judicial notice in connection with Plaintiff's Motion to Remand. First, Defendant asks the Court to take judicial notice of two Indiana Secretary of State business entity reports attached to the Notice of Removal as Exhibits 10 and 11. Doc. # 3 at 2. Second, Defendant asks the Court to take judicial notice of two Indiana Secretary of State certificates of amendment attached to its motion to compel arbitration as Exhibits 9 and 10. Doc. # 23-5 at 2–3. Third, Defendant asks the Court to take judicial notice of the Central District of California's court-holiday schedule in support of its objection and request to strike Plaintiff's late arbitration opposition. Doc. # 27 at 2. The Court GRANTS IN PART Defendant's request as to the Indiana Secretary of State business entity reports submitted with the Notice of Removal. Doc. # 3 at 2. The Court takes judicial notice of the existence and contents of those public filings, but not any reasonably disputed factual inference drawn from them, including any ultimate conclusion about corporate citizenship or principal place of business. *See* Fed. R. Evid. 201(b); *Daniels-Hall*, 629 F.3d at 998–99; *Khoja*, 899 F.3d at 999. Defendant's remaining requests are DENIED AS MOOT because the Court remands this action and therefore does not reach the merits of the motion to compel arbitration or the timeliness of Plaintiff's arbitration opposition

name to Elevance Health, Inc. in June 2022. *Id*. Morris states that TEHC's prior names over the past twenty years were The Anthem Companies, Inc., The Wellpoint Companies, Inc., The Anthem Companies, Inc., and The Elevance Health Companies, Inc. *Id*. ¶ 7.

Morris also states that Plaintiff was an employee of TEHC in 2016, in November 2020, and at the time of Plaintiff's termination on February 4, 2022. *Id*. ¶ 8. Morris states that TEHC, as Plaintiff's employer, would have been responsible for Plaintiff's training, potential promotions, discipline, work schedule, assignments, compensation, and termination. *Id*. ¶ 9. Morris further states that she does not have unfettered access to all employee records and was unable to review all of Plaintiff's records dating back to Plaintiff's initial employment in March 2000 or rehire in November 2002. *Id*. ¶ 10. Instead, Morris reviewed Plaintiff's wage statements from 2016 to 2022, Plaintiff's Workday profile document, and other internal employment information. *Id*.

With its sur-reply, Defendant also submitted a declaration from Lisa Lawson, a Payroll Tax Manager employed by Elevance Health. Doc. # 30-1 ¶ 1. Lawson states that her job duties include managing payroll taxes for all payroll entities under the Elevance Health umbrella. Doc. # 30-1 ¶ 1. Lawson states that The Elevance Health Companies of California, Inc. (formerly The Anthem Companies of California, Inc. and The Wellpoint Companies of California, Inc.) was a subsidiary of Elevance Health and, until December 31, 2024, existed only to process payroll and related taxes and maintain payroll records for Elevance Health employees. *Id*. ¶ 4. Lawson states that this entity had no functions other than payroll, payroll-related tax processing, and payroll records maintenance, and that it had no employees. *Id*.

Lawson further states that Anthem Blue Cross and Blue Cross of California are the same entity and do not have employees. *Id*. ¶ 5. Lawson states that, from 2016 through Plaintiff's termination, Plaintiff's payroll was issued through The Anthem Companies, Inc., now known as The Elevance Companies, Inc., not The Anthem Companies of California, Inc. *Id*. ¶ 6.

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction with subject-matter jurisdiction over only those suits authorized by the Constitution or Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove an action filed in state court to federal court only if the action could have been filed in federal court originally. 28 U.S.C. § 1441(a). "In civil cases, subject matter jurisdiction is generally conferred upon federal district courts either through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C. § 1331." *Peralta v. Hispanic Business, Inc.*, 419 F.3d 1064, 1069 (9th Cir. 2005).

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The removal statute is strictly construed against removal jurisdiction, and the removing party bears the burden of establishing federal jurisdiction. *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir.), amended on denial of reh'g, 387 F.3d 966 (9th Cir, 2004). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam).

Diversity jurisdiction requires complete diversity between the parties and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67–68 (1996); *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). Complete diversity means that each plaintiff must be diverse from each defendant. *Caterpillar*, 519 U.S. at 67–68; *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1004 (9th Cir. 2001). A corporation is a citizen of every state in which it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *Harris v. Rand*, 682 F.3d 846, 850 (9th Cir. 2012).

"In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Grancare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018). The Ninth

Circuit recognizes two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)).

Under the second method, fraudulent joinder exists only if the removing defendant shows that the nondiverse defendant "cannot be liable on any theory." *Grancare*, 889 F.3d at 548 (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)). Thus, "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court." *Hunter*, 582 F.3d at 1046 (quoting *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003)). A claim may fail under Rule 12(b)(6), but the defendant has not necessarily been fraudulently joined. *Grancare*, 889 F.3d at 549. Courts must consider whether a pleading deficiency "can possibly be cured by granting the plaintiff leave to amend." *Id*. at 550.

A defendant invoking diversity jurisdiction based on fraudulent joinder bears a "heavy burden." *Id*. at 548. Courts apply a "general presumption against fraudulent joinder." *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). Fraudulent joinder must be proven by clear and convincing evidence. *Id*.

The Court may consider affidavits and other evidence when deciding whether joinder is fraudulent. *Ritchey*, 139 F.3d at 1318. But the Court must resolve all disputed questions of fact and all ambiguities in state law in favor of the non-removing party. *Hunter*, 582 F.3d at 1042; *Calero v. Unisys Corp.*, 271 F. Supp. 2d 1172, 1176 (N.D. Cal. 2003).

## III. DISCUSSION

Plaintiff seeks remand because, among other reasons, she contends that Anthem Blue Cross, Blue Cross of California, The Anthem Companies of California, Inc., and

The Wellpoint Companies of California, Inc. destroy complete diversity. MTR at 13–15. Defendant responds that those entities were fraudulently joined because they did not employ Plaintiff during the 2020–2022 period relevant to her leave and termination allegations. MTR Opp. at 6–12; Sur-Reply at 2. Although Defendant may ultimately establish that TEHC alone employed Plaintiff during the events giving rise to her claims, fraudulent joinder imposes a more demanding burden: Defendant must show that Plaintiff could not possibly state a claim against the nondiverse defendants, including by amendment. *See Grancare*, 889 F.3d at 548–50.

As explained below, the Court GRANTS Plaintiff's Motion to Remand to the extent it seeks remand, DENIES Plaintiff's request for attorney fees, and DENIES AS MOOT Defendant's Motion to Compel Arbitration.[6]

**A. Defendant Has Not Established Fraudulent Joinder of the California Based Defendants**

The parties' dispute turns on whether Plaintiff could possibly hold at least one California-based defendant liable as an employer, joint employer, agent of an employer, or part of an integrated enterprise. Defendant must show more than that TEHC was Plaintiff's direct employer, or that Plaintiff is unlikely to prevail against the California-based defendants. It must show, by clear and convincing evidence, that Plaintiff could not possibly state a claim against any nondiverse California-based defendant under California law. *See Grancare*, 889 F.3d at 548–50.

That burden is especially difficult where, as here, the alleged fraudulent joinder turns on employer status. Under California law, "the precise contours of an employment

[6] The Court addresses Plaintiff's motion to remand first because subject-matter jurisdiction must be resolved before the Court reaches Defendant's motion to compel arbitration. *See*, e.g., *Harris*, 2024 WL 3815418, at *1, *4 (granting motion to remand and denying motion to compel arbitration as moot); *Burns v. Royal Bank of Canada*, No. 2:25-cv-06283-MWC-AS, 2025 WL 2531471, at *1, *5 (C.D. Cal. Sep. 3, 2025) (granting remand and declining to rule on motion to stay pending arbitration and motion to quash); *Bulnes v. Suez WTS Servs. USA, Inc.*, No. 22-cv-1154-BAS-AHG, 2023 WL 3262938, at *2 (S.D. Cal. May 4, 2023) ("I will first address [plaintiff's] motion to remand because I must have jurisdiction before I can address defendants' motion to dismiss or compel arbitration.") (citation omitted).

relationship can only be established by a careful factual inquiry." *Vernon v. State of California*, 116 Cal. App. 4th 114, 125 (2004) (citation modified). FEHA defines "employer" to include a person "acting as an agent of an employer, directly or indirectly." Cal. Gov't Code § 12926(d). And joint-employer liability turns on the totality of the circumstances, with emphasis on the extent to which the putative employer controls the plaintiff's performance of employment duties. *St. Myers v. Dignity Health*, 44 Cal. App. 5th 301, 312–13 (2019). The Court therefore must take care not to convert the fraudulent-joinder inquiry into a premature merits determination about which entity ultimately employed Plaintiff.

*Harris v. Elevance Health, Inc.*, No. CV 24-03968-MWF (MARx), 2024 WL 3815418 (C.D. Cal. Aug. 12, 2024), provides useful guidance. There, the plaintiff sued Elevance Health, Inc., Blue Cross of California, and The Elevance Health Companies, Inc. for FEHA and CFRA claims arising out of medical leave and termination. 2024 WL 3815418, at *1. The defendants removed on diversity grounds and argued that Blue Cross of California was a sham defendant because it was a Knox-Keene health care service plan and did not employ the plaintiff. *Id*. at *1, *3. The district court rejected that argument and remanded. *Id*. at *4. The court explained that, to establish fraudulent joinder, the defendants had to show there was "no possibility" the plaintiff could hold Blue Cross of California liable as an employer. *Id*. at *2. The court then observed that the employer-status inquiry usually requires a careful factual inquiry and that "district courts generally have not found the question of employer status suitable for resolution in the fraudulent joinder context." *Id*. (quoting *McBee*, 2024 WL 182282, at *4).

This case differs from *Harris* in some respects. Plaintiff here does not allege the same kind of direct operational facts alleged in *Harris*, where the plaintiff claimed that Blue Cross of California dictated day-to-day work and directly paid commissions. *Id*. at *3. That distinction may matter on the merits, but it does not resolve the fraudulent-joinder inquiry. Plaintiff has submitted employment-related records that connect California corporate names and predecessor or affiliate names to her long employment

relationship. Those records include W-2s, a background investigation, a rehire letter, a performance review, and a withholding certificate. Doc. # 15-1 at 27, 39, 46, 50–52, 62, 85. The present record does not foreclose the possibility that Plaintiff could amend to allege a viable theory of liability against at least one California-based defendant. *See also Padock v. Amazon.com, Inc.*, No. 8:24-cv-00890-FWS-JDE, 2024 WL 3275792, at *3–5 (C.D. Cal. July 2, 2024) (granting remand where the defendants argued Whole Foods was fraudulently joined because it did not employ the plaintiff, explaining that employer status is fact-intensive, that joint-employer and integrated-enterprise theories generally are not suitable for resolution at the fraudulent-joinder stage, and that the defendants had not shown by clear and convincing evidence that the plaintiff could not possibly state an employment claim against Whole Foods).

In opposing remand, Defendant argues that Plaintiff's claims arise from the 2020–2022 leave and termination period, that Plaintiff was employed by TEHC during that period, and that TEHC was responsible for Plaintiff's training, discipline, work schedule, assignments, compensation, and termination. MTR Opp. at 6–12; Doc. # 18-1 ¶¶ 8–9. Defendant also submits evidence that Blue Cross of California and Anthem Blue Cross are the same entity and have no employees, and that The Elevance Health Companies of California, Inc. existed only as a payroll and tax entity and had no employees. Doc. # 30-1 ¶¶ 4–6. If credited on the merits, that evidence may defeat Plaintiff's claims against the California-based defendants.

But that evidence does not carry Defendant's fraudulent-joinder burden. Plaintiff does not rely only on stray logos or generalized corporate affiliation; she points to employment records produced in response to Labor Code records requests that identify or reference WellPoint Health Networks, Blue Cross of California, Anthem Blue Cross, The WellPoint Companies of California, Inc., and The Anthem Companies of California, Inc. Doc. # 15-1 ¶ 4; id. at 5, 27, 39, 46, 50–52, 62, 85. Several of those records are employment-specific: W-2s, a background investigation, a rehire letter, a performance review, and a California withholding certificate. *Id*. Plaintiff also points to

California Secretary of State records identifying Blue Cross of California as a California corporation and The Elevance Health Companies of California, Inc. as a California corporation described as a payroll entity for regulated California entities. *Id*. at 88, 96. These materials are enough to create a non-fanciful possibility that Plaintiff could amend to allege an employer, joint-employer, agency, or integrated-enterprise theory that accounts for the payroll-related role reflected in the records.

Defendant may be correct that Plaintiff's strongest documents connecting her to the California-based defendants predate the alleged leave and termination events. After all, the Complaint focuses on Plaintiff's medical leave beginning in November 2020 and her termination in February 2022. Doc. # 1-2 ¶¶ 20–25. But Plaintiff argues that the records reflect a broader corporate structure and employment relationship that could support an amended employer, joint-employer, agency, or integrated-enterprise theory. That theory may prove too attenuated after discovery. But the Court cannot say on this record that it is impossible as a matter of settled California law. At this stage, the Court cannot conclude that a state court would sustain a demurrer without leave to amend as to every California-based defendant. *See Grancare*, 889 F.3d at 550.

The same is true of Defendant's "no employees," "payroll entity," and Knox-Keene arguments. At the fraudulent-joinder stage, the Court must resolve factual disputes and ambiguities in Plaintiff's favor. *Hunter*, 582 F.3d at 1042. The Lawson declaration is relevant and may ultimately be persuasive in Defendant's defense against Plaintiff's claims on the merits. But the Lawson declaration does not foreclose amendment. Even accepting it, Plaintiff could still attempt to allege that at least one California-based defendant acted as an employer's direct or indirect agent, shared control over employment matters, or participated in an integrated enterprise. Plaintiff could also attempt to allege that a California-based defendant exercised employment-related control through the payroll, records, or corporate-administration functions reflected in her employment documents.

Accordingly, Defendant has not shown by clear and convincing evidence that Plaintiff cannot possibly state a claim against at least one California-based defendant. The Court therefore may not disregard the citizenship of the California-based defendants for purposes of diversity jurisdiction. Because at least one nondiverse California-based defendant remains in the case, complete diversity is absent and remand is required. *See* 28 U.S.C. § 1447(c); *Caterpillar*, 519 U.S. at 67–68.[7]

**B. Plaintiff's Request for Attorney Fees is Denied**

Plaintiff requests $7,800 in attorney fees incurred in connection with the remand motion. Doc. # 15-1 ¶ 6. The Court denies that request.

Under 28 U.S.C. § 1447(c), a remand order "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Fees are not awarded automatically when remand is granted. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136–37 (2005). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id*. at 141. Conversely, when an objectively reasonable basis exists, fees should be denied. *Id*. Removal is not objectively

[7] Defendant's contrary authorities do not require a different result. *Thomas v. Aetna Health of Cal., Inc.*, No. 1:10-cv-01906-AWI-SKO, 2011 WL 2173715 (E.D. Cal. June 2, 2011), involved a challenge to standing under PAGA rather than a claim that the plaintiff's FEHA/CFRA discrimination and leave claims were insufficient, and emphasized that the plaintiff had offered no factual allegations or evidence connecting the California Aetna entity to her employment. *Id*. at *5–8. Here, Plaintiff has submitted employment-related records referencing California corporate entities and related names. Doc. # 15-1 at 5, 27, 39, 46, 50–52, 62, 85. *Vernon* underscores the factual nature of the inquiry of determining whether an organization is acting as a joint employer rather than authorizing the Court to resolve that inquiry on a disputed jurisdictional record. 116 Cal. App. 4th at 124–25. Nor is this case like *Harwood v. Option Care Enters., Inc.*, No. CV 19-1239-MWF (ASx), 2019 WL 1952692 (C.D. Cal. May 2, 2019), where the plaintiff did not meaningfully dispute that the alleged sham defendant was a shell corporation with no employees and no control over the means and manner of the plaintiff's employment. *Id.* at *7–8; *see Harris*, 2024 WL 3815418, at *3 (distinguishing *Harwood*). And *Waterman v. Wells Fargo & Co.*, No. CV 17-7190-MWF (JEMx), 2018 WL 287171 (C.D. Cal. Jan. 4, 2018), supports remand: the relevant question is not whether Plaintiff has already proven an integrated-enterprise or joint-employer theory, but whether it is possible for Plaintiff to state one. *Id*. at *7. Because Defendant has not established fraudulent joinder of the California-based defendants, the Court need not decide Plaintiff's remaining arguments concerning the amount in controversy, Elevance Health's principal place of business, or the citizenship of the individual defendants.

unreasonable merely because the removing party's arguments lack merit. *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008).

Although Defendant has not carried its heavy burden to establish fraudulent joinder, its removal arguments were not objectively unreasonable. Defendant submitted evidence that TEHC employed Plaintiff during the 2020–2022 period central to the Complaint, that TEHC controlled Plaintiff's employment conditions, and that the California-based defendants either had no employees or functioned as payroll or health-plan entities. Doc. # 1-13 ¶¶ 4–5; Doc. # 18-1 ¶¶ 8–10; Doc. # 30-1 ¶¶ 4–6. Defendant also relied on authorities that gave it a colorable basis to argue that the California-based defendants could not be liable as Plaintiff's employers. Defendant's position was unsuccessful, but it was not objectively unreasonable. Plaintiff's request for fees is therefore DENIED.

**C. Defendant's Motion to Compel Arbitration is Moot**

Because the Court lacks subject-matter jurisdiction, the Court does not reach Defendant's motion to compel arbitration. The FAA does not itself create federal jurisdiction. *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009); *Badgerow v. Walters*, 596 U.S. 1, 4 (2022). Accordingly, Defendant's Motion to Compel Arbitration and Stay Action (Doc. # 23) is DENIED AS MOOT.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Plaintiff's Motion for Order Remanding Action to State Court (Doc. # 15) is GRANTED to the extent it seeks remand. As to Plaintiff's request for attorney fees under 28 U.S.C. § 1447(c), the Motion is DENIED.
2. Defendant's Motion to Compel Arbitration and Stay Action (Doc. # 23) is DENIED AS MOOT; and
3. This action is REMANDED to the Superior Court of the State of California, County of Los Angeles, Case No. 25STCV00658.

**IT IS SO ORDERED.**

Dated: August 31, 2026

Cynthia Valenzuela
HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE